## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAUL ORTIZ, | : | CIVIL NO. 3:11-CV-1661 |
| | : | |
| Petitioner, | : | (Judge Caputo) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| SUP'T SAUERS, et al., | : | |
| | : | |
| Respondents. | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

The case of Saul Ortiz presents a striking example of the importance of understanding, and complying with, the timeliness requirements prescribed by law for federal habeas corpus petitions.

The factual background of this state prosecution can be simply stated:  On the evening of September 7, 2005, police were dispatched to the 300 block of Susquehanna Avenue in the City of York, where they found the victim in this case, Orlando Maisonete, lying prone in an alley, shot three times in the back, wounds which left Maisonete's spinal cord shattered. (Doc. 10-1, p.74)   Three eyewitnesses to the shooting were located. (Id.)   All three eyewitnesses identified Saul Ortiz as Maisonete's assailant, selecting Ortiz from a photo array as the man who shot and crippled Maisonete. (Id.)   Arrested, Ortiz was questioned by police and admitted to shooting Maisonete and later hiding the weapon used in this armed assault. (Id.)   Ortiz

claimed, however, that he had shot Maisonete in self-defense, a claim that was belied by the physical evidence, which revealed that Maisonete was shot multiple times in the back by his attacker. (Id.)

On August 17, 2006, following a trial, a jury convicted Ortiz of Criminal Attempt to Commit Homicide, Aggravated Assault (Serious Bodily injury) and Aggravated Assault (Bodily Injury by deadly weapon). (Doc. 10)  On September 25, 2006, the Court imposed a sentence of 18-36 years on Ortiz on the charge of Criminal Attempt Homicide.[1] (Id.)  Ortiz then separately proceeded to a stipulated bench trial on October 11, 2006, on the state firearms possession charge, was found guilty of that offense, and was sentenced to 5-10 years incarceration, concurrent with the attempted murder conviction. (Id.)

Following these convictions, on October 12, 2006, Ortiz filed a notice of appeal to the Pennsylvania Superior Court from the two convictions and sentences imposed upon him as a result of this shooting incident. (Doc. 10-1, ¶9).  On September 6, 2007, the Pennsylvania Superior Court affirmed Ortiz's convictions and sentences. (Id.)  On October 5, 2007, Ortiz filed a timely petition for allocatur with the Pennsylvania Supreme Court, which was denied on  April 15, 2008. (Id., ¶¶11 and 12.)  With the

---

[1]The two aggravated assault charges merged with this attempted homicide charge for sentencing purposes. (Doc. 10)

denial of this petition by the Pennsylvania Supreme Court, Ortiz's conviction and sentence became final on  July 14, 2008, when the time for timely seeking United States Supreme Court review lapsed without any action of Ortiz's part. (Id., ¶13)

One-hundred and ninety (190) days then elapsed from July 14, 2008, until Ortiz filed a petition for post-conviction collateral relief in state court on January 20, 2009. (Id., ¶14)  A hearing was conducted in the Court of Common Pleas of York County on this post-conviction relief petition on March 23, 2009, and on May 5, 2009, the Common Pleas court entered an order denying Ortiz post-conviction relief. (Id., ¶¶ 14, 15 and 16)

Ortiz, in turn, appealed this decision on his post-conviction relief act petition to the Pennsylvania Superior Court on June 3, 2009. (Id., ¶17)  On March 3, 2010, the Superior Court issued an opinion and order affirming the denial of post-conviction relief to Ortiz, who filed a petition for allocatur with the Pennsylvania Supreme Court on April 5, 2010. (Id., ¶¶18 and 19.)  On September 9, 2010, the Pennsylvania Supreme Court denied this petition for allocatur, (id., ¶20), and Ortiz's state appeals of this post-conviction petition drew to a close.

Another year then passed before Ortiz filed the instant federal habeas corpus petition on September 6, 2011. (Doc. 1)  During this year-long hiatus the only action which Ortiz took to further litigate this case involved a sporadic effort that occurred on July 19, 2011, when Ortiz filed an untimely motion to reconsider the denial of

allocatur, which was rejected by the prothonotary of the Pennsylvania Supreme Court as an untimely filing, and returned to the petitioner on July 25, 2011.(Id., ¶22)  Having been rebuffed by the Pennsylvania Supreme Court, Ortiz then allowed six weeks to elapse before filing this federal habeas corpus petition. (Doc. 1)

It is against this procedural background marked by delay that Ortiz filed his federal habeas corpus petition.   A copy of this petition was served upon the respondents, who have now filed an initial response to the petition which raises the bar of the Antiterrorism and Effective Death Penalty Act of 1996, ("AEDPA"),  28 U.S.C. § 2244, one-year statute of limitations as a defense in this case. (Doc. 10)  The parties have had an opportunity to address this issue, and this matter is now ripe for resolution. (Docs. 1, 10 and 16)

For the reasons set forth below, it is recommended that this petition be dismissed as untimely.

## II.     Discussion

### A. State Prisoner Habeas Relief–The Legal Standard.

A state prisoner seeking to invoke the power of this Court to issue a writ of habeas corpus must satisfy the standards prescribed by 28 U.S.C. § 2254, which provides in part as follows:

> **(a)** The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is

in custody in violation of the Constitution or laws or treaties of the United States.

**(b)(1)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--

> **(A)** the applicant has exhausted the remedies available in the courts of the State;
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**(2)** An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

28 U.S.C. § 2254 (a) and (b).

### (1.)   <u>Substantive Standards for Habeas Petitions</u>

As this statutory text implies, state prisoners must meet demanding substantive

and procedural benchmarks in order to obtain habeas corpus relief.  At the outset, a

petition must satisfy exacting substantive standards to warrant relief.  Federal courts

may "entertain an application for a writ of habeas corpus on behalf of a person in

custody pursuant to the judgment of a State court only on the ground that he is in

custody in violation of the Constitution or laws or treaties of the United States."  28

U.S.C. § 2254(a).  By limiting habeas relief to state conduct which violates "the

Constitution or laws or treaties of the United States," § 2254 places a high threshold

on the courts.  Typically, habeas relief will only be granted to state prisoners in those

instances where the conduct of state proceedings led to a "fundamental defect which

inherently results in a complete miscarriage of justice" or was completely inconsistent

with rudimentary demands of fair procedure. See, e.g., Reed v. Farley, 512 U.S. 339,

354 (1994).  Thus, claimed violations of state law, standing alone, will not entitle a

petitioner to § 2254 relief, absent a showing that those violations are so great as to be

of a constitutional dimension. See Priester v. Vaughan, 382 F.3d 394, 401-02 (3d Cir.

2004).

### (2.)   Procedural Benchmarks for Habeas Petitions

### ( a. )   Statute of Limitations

Furthermore, state prisoners seeking relief under Section 2254 must also satisfy

specific, and precise, procedural standards.  Among these procedural prerequisites is

a requirement that petitioners timely file motions seeking habeas corpus relief.  The

Antiterrorism and Effective Death Penalty Act of 1996("AEDPA"), 28 U.S.C. § 2244

established a one-year statute of limitations on the filing of habeas petitions by state

prisoners.  In pertinent part, § 2244(d)(1) provides as follows:

> A 1-year period of limitation shall apply to an application for a writ of
> habeas corpus by a person in custody pursuant to the judgment of a State
> court.  The limitation period shall run from the latest of-
>
> (A) the date on which the judgment became final by the conclusion of
> direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by
> State action in violation of the Constitution or laws of the United States

is removed, if the applicant was prevented from filing by such State
action;

(C)   the date on which the constitutional right asserted was initially
recognized by the Supreme Court, if the right has been newly recognized
by the Supreme Court and made retroactively applicable to cases on
collateral review; or

(D) the date on which the factual predicate of the claim or claims
presented could have been discovered through the exercise of due
diligence.

See Miller v. New Jersey State Dep't of Corr. 145 F.3d 616, 617 (3d Cir. 1998).

The calculation of this limitations period is governed by a series of well-defined

rules.  At the outset, these rules are prescribed by statute, specifically 28 U.S.C. §

2244(d). Section 2244(d) tolls two separate and distinct time periods from statute of

limitations calculations.  First, by statute: "The limitation period shall run from the

latest of-(A) the date on which the judgment became final by the conclusion of direct

review or the expiration of the time for seeking such review." 28 U.S.C.

§2244(d)(1)(A).  Thus, the period of time when any direct appeals are actually pending

in the state courts is tolled from statute of limitations calculations.

In addition, the statute recognizes a second tolling period, and provides that:

The time during which a properly filed application for State post-
conviction or other collateral review with respect to the pertinent
judgment or claim is pending shall not be counted toward any period of
limitation under this subsection.

See Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000).  Therefore, the time during

which a state post-conviction act petition is pending is also excluded from statute of limitations calculations under AEDPA.

In assessing § 2244(d)'s tolling provisions relating to the time when a case is "pending" state review, it is clear that "the term 'pending' must include the time between a court's ruling and the timely filing of an appeal, [and] 'pending' must include the time during which an appeal could be filed even if the appeal is not eventually filed." Swartz, 204 F.3d at 424. Thus, the courts have construed this tolling provision in a forgiving fashion, and in a manner which enables petitioners to toll their filing deadlines for the time periods in which they could have sought further direct appellate review of their cases, even if they did not, in fact, elect to seek such review.

However, for purposes of tolling the federal habeas statute of limitations, a "properly filed application for State post-conviction or other collateral review" only includes procedurally appropriate applications which are filed in a timely fashion under state law. Therefore, if the petitioner is delinquent in seeking state collateral review of his conviction, that tardy state pleading will not be considered a "properly filed application for State post-conviction or other collateral review" and will not toll the limitations period. Satterfield v. Johnson, 434 F.3d 185 (3d Cir. 2006); Pace v. DiGuglielmo, 544 U.S. 408, 412-14 (2005); Long v. Wilson, 393 F.3d 390, 394-95 (3d. Cir. 2004).

Beyond this tolling period mandated by statute, it has also been held that

AEDPA's one-year limitations period is not a jurisdictional bar to the filing of habeas

petitions; <u>Miller</u>, 145 F.3d at 617-18, and therefore is subject to equitable tolling. <u>Id</u>.

at 618-19.   Yet, while equitable tolling is permitted in state habeas petitions under

AEDPA, it is not favored.  As the United States Court of Appeals for the Third Circuit

has observed: "[E]quitable tolling is proper only when the 'principles of equity would

make [the] rigid application [of a limitation period] unfair.'  Generally, this will occur

when the petitioner has 'in some extraordinary way ... been prevented from asserting

his or her rights.'  The petitioner must show that he or she 'exercised reasonable

diligence in investigating and bringing [the] claims.'  Mere excusable neglect is not

sufficient." <u>Id.</u>  at 618-19 (citations omitted).  Indeed, it has been held that only:

> "[T]hree circumstances permit[] equitable tolling: if
>
> (1) the defendant has actively misled the plaintiff,
> (2) if the plaintiff has in some extraordinary way been prevented from asserting his rights, or
> (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum.
> <u>Jones v. Morton</u>, 195 F.3d 153, 159 (3d Cir.1999) (citations omitted)."

<u>Fahy v. Horn,</u> 240 F.3d 239, 244 (3d Cir. 2001).

Applying this exacting standard, courts have held that: "In non-capital cases, attorney

error, miscalculation, inadequate research, or other mistakes have not been found to

rise to the 'extraordinary' circumstances required for equitable tolling. See Freeman v. Page, 208 F.3d 572 (7th Cir.2000) (finding no basis for equitable tolling where the statute of limitations was changed to shorten the time for filing a PCRA only four months prior to the filing of the petition); Taliani v. Chrans, 189 F.3d 597 (9th Cir.1999) (finding lawyer's inadequate research, which led to miscalculating the deadline, did not warrant equitable tolling)." Id. Courts have also repeatedly rejected claims by *pro se* litigants that the burdens of proceeding *pro se* should somehow exempt them from strict compliance with the statute of limitations. See, e.g., Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2001); United States v. Cicero, 214 F.3d 199, 203 (D.C. Cir. 2000); Felder v. Johnson, 204 F.3d 168, 171 (5th Cir. 2000).

Similarly, tardy federal habeas petitioners cannot save otherwise untimely federal filings by relying upon equitable tolling claims based upon procedurally inappropriate filings in state court. Satterfield v. Johnson, 434 F.3d 185 (3d Cir. 2006). Such equitable tolling claims fail as a legal matter, unless the petitioner can show both extraordinary circumstances justifying his failure to timely file his petition, and reasonable diligence in properly pursuing his rights. Id. at 196. Thus, while tardy habeas petitioners often invite courts to find extraordinary circumstances warranting equitable tolling, those invitations are rarely embraced by the courts. See, e.g., Merritt

v. Blaine, 326 F.3d 157 (3dCir. 2003)(denying equitable tolling request); Robinson v. Johnson, 313 F.3d 128 (3d Cir. 2002)(same).

### B.    Ortiz's Petition is Time-Barred by AEDPA's Statute of Limitations

In this case, the Commonwealth argues as a threshold matter that this petition is now barred by § 2244(d)'s one-year statute of limitations.  Our analysis of the delays in this litigation convinces us that these claims are, in fact, now time-barred.

The history of this case reveals that Ortiz was convicted and sentenced five years ago, in October 2006, and pursued a direct appeal of this conviction to the Pennsylvania Superior Court, and the Pennsylvania Supreme Court, a direct appeal process that concluded in on July 14, 2008.

One hundred and ninety days then passed, until January 20, 2009, when Ortiz sought relief under Pennsylvania's Post-Conviction Relief Act, a process that continued through the Pennsylvania trial and appellate courts until September 9, 2010. Three hundred and sixty-two (362) days then passed before Ortiz filed the instant federal habeas petition on September 6, 2011.  Thus, a total of 452 days, which are not subject to any form of statutory tolling elapsed in this case between the date of Ortiz's conviction, and the filing of the federal habeas corpus petition.  Therefore, on its face, Ortiz's petition is untimely and falls outside § 2244(d)'s one-year limitation period.

In response to this assertion of the statute of limitations as a bar to this petition, Ortiz invites us to calculate this limitations period beginning from the date upon which the Pennsylvania Supreme Court refused his motion to re-consider the denial of the petition for allocatur relating to his post-conviction motion, in July of 2011. (Doc. 16) Ortiz cannot save this untimely pleading by attempting to point to his July 19, 2011, filing of a motion to re-consider the Pennsylvania Supreme Court's denial of his petition for allocatur as a legally significant deadline for tolling purposes. (Doc. 16) Indeed, this argument fails for at least four reasons.

First, Ortiz's arguments in this regard entirely discounts the fact that one hundred and ninety days passed without tolling in this case prior to any post-conviction filings by the petitioner in state court, from the conclusion of Ortiz's direct appeals on July 14, 2008, through January 20, 2009, when Ortiz first sought relief under Pennsylvania's Post-Conviction Relief Act.  Thus, at the outset Ortiz's statute of limitations argument proceeds from a flawed premise, one which invites us to completely ignore this initial 6-month delay in pursuing his state claims.

Second, Ortiz fails to consider the additional untolled period of delay that occurred in the course of Ortiz's state post-conviction litigation prior to the filing of this motion to re-consider the denial of this petition for allocatur in July of 2011. Specifically, it is clear that an additional 313 days of untolled time passed between the

denial of his petition for allocatur seeking Pennsylvania Supreme Court review of the

denial of post-conviction relief for the petitioner on September 9, 2010, and the filing

of Ortiz's  motion to re-consider the denial of this petition, on July 19, 2011.  This

delay, coupled with the earlier delay in pursuing his claims, totals 403 days of untolled

time, a delay which far exceeds AEDPA's one-year statute of limitations.  Therefore,

Ortiz's focus on this motion to re-consider the denial of a petition of allocatur as a

legally significant deadline completely discounts the fact that more than a year of

untolled time had elapsed *before* Ortiz ever filed this pleading.

Third, Ortiz's argument fails to take into account settled case law, which rejects

equitable tolling argument based upon procedurally inappropriate filings in state court,

particularly when those procedurally inappropriate failings are tendered in an untimely

fashion by the petitioner.  Thus, where, as here, the petitioner is delinquent in seeking

state collateral review of his conviction, that tardy state pleading will not be considered

a "properly filed application for State post-conviction or other collateral review" and

will not toll the limitations period.  Satterfield  v. Johnson, 434 F.3d 185 (3d Cir.

2006);  Pace v. DiGuglielmo, 544 U.S. 408, 412-14 (2005); Long v. Wilson, 393 F.3d

390, 394-95 (3d. Cir. 2004).

Finally, Ortiz fails to explain the delay in this case which occurred after his

delinquent motion to re-consider was rejected by the prothonotary of the Pennsylvania

Supreme Court on July 25, 2011.  Following this action by the Pennsylvania courts,

Ortiz delayed for an additional 43 days before filing his federal habeas corpus petition,

extending the duration of this untolled delay to more than 450 days.  Considered in the

aggregate, such a pattern of delay demonstrates that Ortiz did not diligently pursue

available routes to collateral relief, a prerequisite for equitable tolling. Satterfield, 434

F.3d at 196.

Having found Ortiz's justifications for this delay wanting, we further conclude

that we cannot independently find any extraordinary circumstances of the type which

would justify equitable tolling of this limitations period.  In this regard, it is incumbent

upon the petitioner to demonstrate that: "the petitioner has '**in some extraordinary**

**way** ... been prevented from asserting his or her rights.'  The petitioner must show that

he or she 'exercised reasonable diligence in investigating and bringing [the] claims.'

Mere excusable neglect is not sufficient." Miller, 145 F.3d at 618-19 (citations

omitted)(emphasis added).

Ortiz has not met this burden of proving extraordinary circumstances justifying

tolling of this limitations period.  The controlling legal standards governing equitable

tolling of the statute of limitations provide that: "[E]quitable tolling is proper only

when the 'principles of equity would make [the] rigid application [of a limitation

period] unfair.'  Generally, this will occur when the petitioner has 'in some

extraordinary way ... been prevented from asserting his or her rights.'  The petitioner must show that he or she 'exercised reasonable diligence in investigating and bringing [the] claims.'  Mere excusable neglect is not sufficient." Miller, 145 F.3d at 618-19. Here, Ortiz does not satisfy his burden of proving both "extraordinary circumstances" which would make application of this limitations period manifestly unfair, and demonstrating that he exercised "reasonable diligence" in pursing his claims.  Quite the contrary, Ortiz provides virtually no explanation of these delays in pursuing his claims.

Further, we find that equitable tolling would be particularly inappropriate here, given the nature of the claims that Ortiz seeks to advance in a tardy fashion.  In his petition Ortiz complains that his counsel erred in several ways at trial.  These claims involve evidentiary matters which would have occurred, and been apparent  to Ortiz five years ago, at the time of his 2006 trial.  These matters would also have been claims that Ortiz thoroughly litigated in his state PCRA litigation in 2009.  Therefore, Ortiz simply cannot now show  "that he . . . 'exercised reasonable diligence in investigating and bringing [the] claims,'"  Miller, 145 F.3d at 618-19 (citations omitted), when he delayed for more than a year in presenting these matters.

Yet, while Ortiz has made no showing of extraordinary circumstances on his part which would justify tolling this limitations period, there are substantial interests that

weigh in favor of holding Ortiz strictly to the limitations period prescribed by law. These countervailing interests include the strong societal interests favoring finality in litigation, as well as the institutional interests of the criminal justice system, which favor prompt presentation and resolution of disputes. However, when considering a statute of limitations question in the context of a belated collateral attack upon a criminal conviction arising out of a crippling assault on another person, there is also an important human dimension to the statute of limitations. In 2006, a jury found that Saul Ortiz attempted to kill Orlando Maisonete, when Ortiz shot Maisonete three times in the back, wounds which left Maisonete's spinal cord shattered. In reaching this verdict the jury understandably discounted Ortiz's claims that he fired multiple rounds into the back of his victim acting in self-defense. Indeed, as a matter of physics and fact bullets shot into a victim's back are rarely fired in self-defense.

Ortiz has had numerous opportunities to contest his guilt before a jury, on direct appeal, in collateral proceedings in state court, and in an appeal of those collateral proceedings. To ignore the limitations period prescribed by law, and  permit Ortiz to belatedly re-open this thoroughly litigated case, would compel the victim in this case to, once again, experience the trauma of those events. Since Ortiz has not fulfilled his responsibility to bring this petition in a timely manner, and has not carried his burden of showing extraordinary circumstances justifying a tolling of the statute of

limitations, he should not be entitled to compel the government to require his victim to revisit these events.

In short, Ortiz's petition invites this Court to ignore his procedural defaults, discount the statute of limitations, and re-open a five year old case involving an assault which left its victim with a shattered spine, long after that case has been completely litigated in the state courts, and without considering the potential harm which could be experienced by the victim if he was required to endure these events once again. Since this request flies in the face of the law, and cannot be justified on the facts, this Court should decline this invitation, and deny his petition for writ of habeas corpus. See, e.g., Merritt v. Blaine, 326 F.3d 157 (3dCir. 2003)(denying equitable tolling request); Robinson v. Johnson, 313 F.3d 128 (3d Cir. 2002)(same).

### III.    Recommendation

Accordingly, for the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254, and the Response in Opposition to this Petition, IT IS RECOMMENDED that the Respondents' Motion to Dismiss be GRANTED and the Petition be DENIED, and that a certificate of appealability should not issue.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 7th day of November, 2011.

*S/Martin C.  Carlson*

Martin C. Carlson

United States Magistrate Judge